# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RHONDA L. PARKER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-14-108-RAW-SPS |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Rhonda L. Parker requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 3, 1978, and was thirty-four years old at the administrative hearing (Tr. 39, 121). She has completed high school and some college, and has worked as a carhop, cashier, childcare worker, fast food cook, and stocker (Tr. 29, 40, 142). The claimant alleges she has been unable to work since November 1, 2010, due to a back injury, pelvic injury, detached retina, bi-polar disorder, and screws in her left arm and left knee (Tr. 141).

## Procedural History

On March 1, 2011, the claimant applied for supplemental benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her original application was denied. ALJ J. Frederick Gatzke held an administrative hearing and determined the claimant was not disabled in a written decision dated January 23, 2013 (Tr. 22-31). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that she must have intermittent opportunity to alternately sit/stand, and that she have no requirement to resolve disputes with customers on behalf of the employer (Tr. 26). The ALJ concluded that although the claimant could

not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform, *e. g.*, addresser, document preparer, and assembler (Tr. 30).

**Review**

The claimant's sole contention of error is that the ALJ erred in accounting for her mental limitations, particularly as to the opinions of the state reviewing physicians. The undersigned Magistrate Judge finds this contention unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of status post lumbar fusion in 2008, generalized arthritis, retinal detachment with surgical intervention in 2011, and depression (Tr. 24). The medical evidence relevant to this appeal reveals that the claimant was prescribed depression medication from her treating physician (Tr. 263-276).

At a consultative physical exam on August 10, 2011, Dr. Ronald Schatzman noted the claimant reported a history of bipolar disorder. The claimant then underwent a mental status examination by Kathleen Ward, Ph.D., on September 7, 2011 (Tr. 297). Dr. Ward noted, *inter alia*, that the claimant was somewhat disheveled, mildly dysthymic with some brightening, gave good effort, and had an almost stumbling gait (Tr. 298). Furthermore, the claimant's thought processes were logical and organized although she had some deficits in social judgment, there was no evidence of delusional thought, and she was oriented to time, date, and place (Tr. 298-299). She assessed the claimant with depressive disorder, not otherwise specified, believed she could handle any benefits awarded, and indicated the claimant may benefit from supportive therapy.

On September 15, 2011, Sally Varghese, M.D., reviewed the claimant's record and completed a mental RFC assessment in which she indicated that the claimant was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 301-302). She then stated in her functional assessment that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, could not relate to the general public, but could adapt to a work situation (Tr. 303).

On November 28, 2011, Kieth McKee, Ph.D., reviewed the claimant's record and completed a second mental RFC assessment, finding the claimant only moderately limited in those same three categories (Tr. 332-333). He then stated in his functional capacity assessment that the claimant had moderate limitations in her ability to perform complex tasks and to interact with others, and that evidence indicated she could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 334).

At the administrative hearing, the claimant testified that she took medication because they told her she had depression, and that she used to see a counselor but no longer did (Tr. 46). Her representative asked her what symptoms she had with depression and anxiety, and she said she did not know but that it runs in her family, that she was not sure if it has worsened since her 2005 car accident, and that her medication dosage had largely stayed the same (Tr. 47).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record and a Third Party Function Report submitted

by the claimant's boyfriend (Tr. 26-29). As to her mental impairments, the ALJ noted the claimant's treatment for depressive symptoms with her treating physician, her reports of a history of bipolar disorder to Dr. Schatzman, and Dr. Ward's findings. He then turned to the opinions of the state reviewing physicians, Dr. Varghese and Dr. McKee, summarizing their mental RFC assessments, then stating that "[s]uch opinions by program physicians are afforded the weight of expert medical opinions by non-examining physicians in accordance with Social Security Ruling 96-6p," but stated that after considering the claimant's hearing testimony, the claimant could perform no more than sedentary work with a sit/stand option and no requirement to resolve disputes on behalf of the employer (Tr. 28).

The claimant argues that the ALJ engaged in improper picking and choosing when he failed to adopt the findings of Dr. Varghese and Dr. McKee that limited the claimant to relating to supervisors and/or others on a superficial work basis, and further failed to provide reasons for rejecting these limitations. Social Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id*. at *4. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id*. at *2. *See also Valdez v. Barnhart*, 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion],

*citing* 20 C.F.R. § 416.927(f)(2)(ii). The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. He noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physician opinions, including the findings of Dr. Varghese and Dr. McKee. He then stated that he chose not to adopt all the limitations they found, referred to the claimant's own hearing testimony as the basis for finding that she could perform the listed RFC.

The claimant contends that the ALJ improperly adopted some, but not all of the findings of Dr. Varghese and Dr. McKee, relying on *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007), for support. *See Haga*, 482 F.3d at 1208 ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination."). But here, the ALJ *did not* purport to adopt some but not all of the limitations without explanation; rather, he noted that he had considered the opinions but that the claimant's hearing testimony had affected his ultimate RFC determination as to the claimant's limitations.

Furthermore, as the Commissioner properly asserts, even if the ALJ erred in his analysis of the reviewing opinions, such error is harmless here because the jobs identified by the ALJ are not contrary to the limitations regarding relating to supervisors and

coworkers on a superficial work basis, in that the requirements of "Taking Instructions – Helping" is considered "Not significant" and talking and hearing are "not present" as requirements. See DICOT §§ 209.587-010, 249.587-018, 734.687.018. The claimant argues that such an error *is not* harmless because these jobs have a people rating of 8, which she asserts is not superficial, but there is no support for this argument. *See Lara v. Colvin*, 2014 WL 37746, at *4 n.4 (W. D. Okla. Jan. 6, 2014) ("[E]ven if the DOT could be interpreted as assigning a "Level 8 people category" to the Housekeeper job, that category requires only the ability to attend "to the work assignment instructions or orders of supervisor." The record supports Plaintiff's ability to take instructions. Indeed, Plaintiff admits that Dr. Varghese concluded that she could "perform routine simple tasks with routine supervision.") [internal citations omitted].

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**